## A05A2235. TATE v. THE STATE.
### (628 SE2d 730)

RUFFIN, Chief Judge.

A jury found Glenn Tate III, guilty of possessing cocaine with intent to distribute and obstructing a law enforcement officer. He appeals, contending that he should be granted a new trial because (1) a juror was coerced into finding him guilty; (2) the State did not reveal the existence of a leniency deal between the government and a witness; and (3) the evidence did not prove beyond a reasonable doubt that the substance he possessed was cocaine. The trial court denied Tate's motion for a new trial. For reasons discussed below, we affirm.

Viewed in a light most favorable to the verdict,[1] the evidence shows that the Georgia Bureau of Investigation ("GBI") used a confidential informant, Medru Marcus, to set up a cocaine purchase. Marcus telephoned Eddie King and arranged to purchase half a kilo of cocaine for $13,000. Marcus and King were to get the cocaine from King's supplier the next day.

On September 25, 2002, GBI agents met with Marcus and his girlfriend, searched them for money and narcotics, and gave them audio surveillance devices that the agents could monitor. Marcus and his girlfriend then met with King, and the three drove to a gas station in Oconee County. King's supplier was to bring the cocaine to them there.

A vehicle arrived at the gas station, and both King and Marcus entered the back seat. Tate was in the front passenger seat. When Marcus entered the vehicle, he saw a blue plastic bag on the back seat that supposedly contained a half kilogram of cocaine. Marcus refused to purchase the cocaine until he could weigh it. Tate then took a small plastic bag out of a brown paper sack, showed Marcus what appeared to be crack cocaine, and said, "this is what it's going to look like when you cook it."

GBI agents arrived at the gas station and attempted to arrest the men in the vehicle. The driver, however, started the vehicle and drove away. While fleeing from law enforcement, Tate threw two guns, the blue plastic bag and the brown paper sack out of the vehicle. After the vehicle collided with a truck, Tate ran from the scene but was arrested shortly thereafter. Law enforcement officers recovered the blue plastic bag, a brown paper sack containing a plastic bag, another small plastic bag, and a loaded handgun from the area.

After he was arrested, Tate gave a statement in which he claimed that "the stuff was his." Tate stated that he had received calls from Marcus about purchasing a large quantity of cocaine, but he did not

---

[1] See *Smith v. State*, 276 Ga. App. 677 (1) (624 SE2d 272) (2005).

have that much cocaine available, so he put deodorant into a bag intending to sell it as cocaine. The three plastic bags recovered at the scene were field tested and the tests were negative for cocaine. The bags were subsequently tested by the State crime lab. In the crime lab test, the substance in the blue plastic bag weighed 484.16 grams and was positive for cocaine, but was less than five percent pure. The contents of the two smaller bags also tested positive for cocaine; the net weight of their contents was 32.09 grams, and one was 67.9 percent pure while the other was 75 percent pure.

The jury found Tate guilty of possession with intent to distribute cocaine and obstruction of a law enforcement officer. The jury was polled, and each juror agreed to the verdict. After the jury was released, Juror Messer approached the trial judge and stated that he had felt pressured in the jury room and that "people did not want him to express his views." Juror Messer told the judge that the verdict was still his verdict, but he explained: "I just wanted to let you know I felt like people really didn't want to hear my views."

1. Tate contends he should be granted a new trial because Juror Messer was pressured into returning a guilty verdict. Tate concedes, however, that jurors generally may not impeach their own verdict.[2] Exceptions to this rule are made only when (1) prejudicial, extrajudicial information has been brought to the jury's attention; (2) nonjurors have interfered with deliberations; or (3) there has been irregular jury conduct so prejudicial that the verdict lacks due process.[3] None of these grounds is alleged here. And all the cases cited by Tate in support of granting a new trial involve jurors who stated during a poll of the jury that the verdict was not theirs.[4] Under the circumstances here — where the juror agreed to the verdict during the poll and subsequently affirmed that it was his verdict, but merely expressed reservations about the process — the trial court did not err in refusing to grant Tate a new trial.[5]

2. Next, Tate asserts that the trial court should have declared a mistrial because the State did not disclose that Marcus had a deal with federal authorities for leniency in federal criminal charges against him. At trial, Marcus testified that he was serving a 22-year federal sentence which had been reduced to 14 years on the basis of his cooperation with the GBI. Tate also cross-examined the GBI case agents on this issue; both testified that they knew Marcus got a

---

[2] See *Roebuck v. State*, 277 Ga. 200, 206 (9) (586 SE2d 651) (2003).

[3] See *Harrell v. State*, 253 Ga. App. 691, 694 (3) (560 SE2d 295) (2002).

[4] See *Benefield v. State*, 278 Ga. 464, 465-466 (602 SE2d 631) (2004); *Larry v. State*, 266 Ga. 284, 287-288 (5) (466 SE2d 850) (1996); *Miller v. State*, 265 Ga. App. 402, 403 (2) (593 SE2d 943) (2004).

[5] See *Parker v. State*, 249 Ga. App. 509, 512 (2) (548 SE2d 475) (2001).

reduction in his sentence for his cooperation with them, but did not know the extent of the reduction.

The State has a duty, under *Brady v. Maryland*[6] and *Giglio v. United States*,[7] to disclose favorable evidence to the defendant in a criminal matter; "[t]his includes disclosure of impeachment evidence which could be used to show bias or interest on the part of a key State witness."[8] In order to establish a successful *Brady* claim, a defendant must show:

> (1) the State possessed evidence favorable to the defendant; (2) the defendant did not possess the favorable evidence and could not obtain it himself with any reasonable diligence; (3) the State suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the trial would have been different.[9]

Assuming, without deciding, that the first three factors are present in this case, Tate's *Brady* claim nonetheless fails because he cannot demonstrate a reasonable probability that the outcome of his trial would have been different if the State had disclosed Marcus's sentence reduction to him. The State elicited testimony from Marcus about the reduction, and Tate cross-examined him extensively about the issue. Marcus testified that he worked with the GBI "for a good reduction" and that "the only thing [he] was interested in getting [was] all [he could] get cut off [his] sentence." Marcus was very clear about the details of the agreement and his motivation for arranging to purchase cocaine. Because this impeachment evidence was, in fact, presented to the jury, there is no reasonable probability that the outcome of the trial would have been different if the State had disclosed the evidence to Tate earlier in the case.[10]

3. Finally, Tate challenges the sufficiency of the evidence that the substance found at the scene was actually cocaine. We will uphold the verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[11] Tate argues that field tests were negative for cocaine and that the results from the State crime lab showed that the substance in the blue plastic bag was less than five percent pure cocaine. Tate cites no case law to support

---

[6] 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

[7] 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972).

[8] *Ford v. State*, 273 Ga. App. 290, 291 (614 SE2d 907) (2005).

[9] *Schofield v. Palmer*, 279 Ga. 848, 852 (2) (621 SE2d 726) (2005).

[10] See *Smith v. State*, 276 Ga. 263, 265-266 (3) (577 SE2d 548) (2003).

[11] *Way v. State*, 252 Ga. App. 9 (1) (555 SE2d 230) (2001).

his contention that a substance which tests positive for cocaine, but is less than five percent pure, cannot be the basis for a conviction for possession of cocaine with intent to distribute.[12] We need not reach that issue, however, because the two smaller bags found at the scene tested positive for cocaine with purity levels of 67.9 percent and 75 percent. Such evidence was sufficient for the jury to find that the substance Tate possessed was cocaine.[13]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED MARCH 21, 2006.

*James W. Smith,* for appellant.
*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney,* for appellee.

---

[12] We note that the trafficking statute, OCGA § 16-13-31 (a) (1), requires "28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine." The jury, however, found Tate not guilty of trafficking in cocaine. And the statute under which Tate was convicted of possession with intent to distribute, OCGA § 16-13-30 (b), contains no such limitation.

[13] See *Brooks v. State,* 252 Ga. App. 389, 390-391 (3) (556 SE2d 484) (2001).