[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-16918

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 27, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-02265-CV-ODE

SAMUEL DAVID CROWE,

Petitioner-Appellant,

versus

HILTON HALL, Warden,
Georgia Diagnostic and
Classification Prison,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 27, 2007)**

Before BIRCH, BARKETT and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

Samuel David Crowe, who pleaded guilty to the murder of Joe Pala and was sentenced to death, now appeals the denial of his petition for a writ of habeas corpus. We must decide whether Crowe has overcome the procedural default of four issues he raised for the first time in his state habeas petition. Crowe alleged that, during his sentencing trial, (1) the state withheld evidence that the victim's coworkers had been investigated for drug use; (2) an improper reenactment of the murder occurred when the jury viewed the crime scene; (3) a courtroom bailiff made an improper remark to the jury; and (4) the jury engaged in premature deliberations. Because Crowe has not established prejudice from these alleged errors, we affirm the denial of Crowe's habeas petition.

## I. BACKGROUND

On March 2, 1988, Crowe decided to rob his former employer, Wickes Lumber Company in Douglasville, Georgia, because he was experiencing financial difficulties. That evening, Crowe went to Wickes while manager Joe Pala was closing the store. Pala let Crowe in the store and the two men conversed for a few minutes. When Pala turned to complete some paperwork, Crowe shot him in the back. As Pala stumbled away, Crowe fired two more shots at Pala but missed. Crowe struck Pala's head with a can of paint. Pala fell to the ground, and Pala's face was covered with paint. As Pala lay motionless, Crowe retrieved a crowbar

from a store display and smashed Pala's skull. Crowe then stole $1,160.30 from the store and returned to his home, where he hid the gun, crowbar, paint can, and his paint-covered clothing.

The next morning, employees of Wickes found Pala's body. After a witness reported having seen the car that belonged to Crowe's wife, also a Wickes employee, parked at the store the evening of the murder, police questioned Crowe's wife and learned that Crowe had driven her car the night before and had undressed himself in the basement when he arrived home. Crowe was arrested that afternoon and gave the sheriff two consistent, tape-recorded confessions in which he explained in detail his commission of the crimes. In those confessions, Crowe admitted that he killed Pala because he needed the money to pay his bills, including his mortgage and a civil judgment.

Six months later, Crowe moved the trial court to suppress his confessions. He testified that he did not kill Pala, but rather arrived at the store after Pala was already dead. Crowe testified that he had confessed initially because he feared his wife had been charged with the murder. A year after the murder, Crowe gave a third, videotaped confession to the sheriff in which Crowe stated that he killed Pala after a heated argument in which Pala had threatened to tell Crowe's wife about Crowe's use of illegal drugs. Crowe stated that he was in fair financial

3

condition at the time of the murder and stole the money only to make the crime look like a robbery.

Against the advice of his counsel, Crowe pleaded guilty to murder and entered a plea of guilty under North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160 (1970), to the charge of armed robbery. The state sought the death penalty, and a sentencing jury heard four days of evidence from the state and the defense, including testimony from police investigators and the two Wickes employees who discovered Pala's body. The jury found three aggravating circumstances— the murder was committed (1) during the course of an armed robbery and (2) for the purpose of receiving money, and (3) was outrageously and wantonly vile, horrible, or inhuman in that it involved depravity of mind and an aggravated battery—and issued its binding recommendation of a sentence of death on November 18, 1989. The judge also sentenced Crowe to life imprisonment for the armed robbery.

Crowe appealed and filed an extraordinary motion for a new trial. The trial court denied Crowe's motion for a new trial. The Supreme Court of Georgia affirmed Crowe's convictions, sentences, and the denial of the motion for a new trial. Crowe v. State, 265 Ga. 582, 458 S.E.2d 799 (1995), cert. denied, 516 U.S. 1148, 116 S. Ct. 1021 (1996).

Crowe filed a habeas petition in the Superior Court of Butts County, Georgia, and attacked his convictions and sentences on numerous grounds. Crowe raised several new grounds for relief. Four of those issues are the subject of this appeal: (1) the state improperly withheld police reports and interview notes relating to the May 1988 investigation of drug use by Wickes employees, which Crowe had recently obtained through an Open Records Act request; (2) the jury saw a prejudicial reenactment of the murder and heard off-the-record evidence during its view of the crime scene, as related by jurors in recent affidavits; (3) a courtroom bailiff told the jury that defense lawyers often block the jury's view of the defendant if the defendant is not going to testify, as related by a juror in a recent affidavit; and (4) the jury engaged in premature deliberations, as related by a juror in a recent affidavit.

The state court denied habeas relief. The court concluded that the four issues that are the subject of this appeal were procedurally defaulted when Crowe failed to raise them in either his direct appeal or his extraordinary motion for a new trial, and Crowe had not established cause for the default and prejudice from the alleged errors. The Supreme Court of Georgia denied Crowe's application for a certificate of probable cause to appeal.

Crowe filed a habeas petition in federal district court, 28 U.S.C. § 2254, and alleged 22 grounds for relief. The district court, in a careful and well-reasoned opinion, denied habeas relief, Crowe v. Terry, 426 F. Supp. 2d 1310 (N.D. Ga. 2005), but later granted Crowe a certificate of appealability on the issue whether the four issues described above were procedurally defaulted. We expanded the certificate of appealability to allow us to reach the merits of those issues, if they were not procedurally defaulted.

## II.  STANDARD OF REVIEW

We review de novo the denial of habeas relief by the district court, McNair v. Campbell, 416 F.3d 1291, 1297 (11th Cir. 2005), but Crowe's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which limits our review of the decisions of the state courts and establishes a "general framework of substantial deference" for reviewing "every issue that the state courts have decided." Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th Cir. 2005). Unless the decision of the Georgia court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court," that decision will not be disturbed on habeas review. 28 U.S.C. § 2254(d);

Clark v. Crosby, 335 F.3d 1303, 1307-08 (11th Cir. 2003). Findings of fact by the state court are presumed correct, and Crowe bears the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. DISCUSSION

The state habeas court found that the four issues involved in this appeal were procedurally defaulted under Georgia law because they were raised for the first time in Crowe's state habeas petition. See Black v. Hardin, 255 Ga. 239, 240, 336 S.E.2d 754, 755 (1985) ("[F]ailure . . . to pursue [an issue] on appeal ordinarily will preclude review by writ of habeas corpus."). Because federal courts "will not review judgments of state courts that rest on adequate and independent state grounds," Michigan v. Long, 463 U.S. 1032, 1041, 103 S. Ct. 3469, 3477 (1983), "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,'" Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989). We conclude that, even if Crowe could establish cause for the default of these issues, he cannot establish actual prejudice from the alleged errors. We discuss each of Crowe's allegations of error in turn.

## A. Withholding of Police Reports

Crowe alleged in his state habeas petition that the state failed to disclose to the defense police interview notes and reports from a May 1988 investigation of drug use by Wickes employees, in violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963). Crowe argues that the suppression of these materials prejudiced his defense in two main ways: the evidence would have enabled him to impeach the two Wickes employees who testified at the sentencing trial, and it would have bolstered his theory that he killed Pala in an argument about drug use rather than for money. We disagree, and conclude that Crowe has not established prejudice.

The first argument fails for two reasons. First, the alleged Brady evidence would not have enabled Crowe to impeach the testimony of the Wickes employees, Ben Covington and Huey Moss, because it was irrelevant to their testimony. Covington and Moss testified about their discovery of the crime scene the morning after the murder. They also testified that Crowe had asked them for $1,500 in the weeks before the murder, and were cross-examined on their knowledge of Crowe's need for the money. Their testimony never mentioned drugs, and neither Covington nor Moss is named in the alleged Brady materials. Crowe argues that the Brady evidence would have been admissible to show the

witnesses' bias, under a theory that their testimony was colored by their fear of prosecution for drug offenses, but nothing in the record suggests that the two men even knew about the investigation into allegations of drug use by their coworkers.

Second, even if the evidence were admissible for some impeachment purpose, Crowe has not established a reasonable probability that introducing it would have changed the jury's decision. Much of the testimony of Moss and Covington was cumulative; the brutality of the scene that they described was conveyed even more powerfully to the jury through dozens of photographs and the testimony of police investigators. The testimony regarding Crowe's need for money, which was probed by defense counsel on cross-examination, was consistent with Crowe's first two confessions, which provided even greater detail about his financial situation.

Crowe's second argument also fails. The alleged Brady evidence would not have bolstered Crowe's statement in his third confession that he killed Pala to prevent him from telling Crowe's wife about Crowe's drug use. The third confession was highly unreliable. Given a year after the murder, the third confession differed sharply from the two confessions given the day after the murder and from Crowe's statement of innocence six months after the murder at the suppression hearing, and the third confession was inconsistent with the

9

physical evidence at the crime scene. The alleged Brady materials also do not directly corroborate the story Crowe told in the third confession. They provide no support for Crowe's allegation that Joe Pala knew about Crowe's drug habit. With respect to Crowe's use of drugs generally, the police reports are inconsistent and contradictory. Two employees, including one who knew Crowe "very well," denied that Crowe had ever used drugs. One employee stated that she had smoked marijuana with Crowe once but did not think he ever used cocaine. Two other employees told police of their firsthand knowledge that Crowe used cocaine.

Crowe argues that the alleged Brady evidence would have impeached the sheriff's testimony about the third confession, but that testimony was largely consistent with the contents of the reports. Sheriff Earl Lee testified that "drugs [had] come up in the investigation" and he recalled hearing that Crowe had used marijuana. Lee admitted that he "investigate[d] early on cocaine and marijuana use of some [Wickes] employees" but did not recall hearing that Crowe had used cocaine before Crowe said so in the third confession. Two of the police reports explicitly mention cocaine use by Crowe, but Lee's failure to recall that fact would not have undermined the thrust of his testimony: that Crowe had nearly a year after the drug investigation to concoct and refine his story about his drug-related motive for the murder. Crowe cannot establish that, "had the evidence been disclosed to

10

the defense, the result of the proceeding would have been different." United

States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985); see Strickler v.

Greene, 527 U.S. 263, 282, 119 S. Ct. 1936, 1949 (1999).  The Brady evidence

does little to bolster the defense's theory of the murder, and it cannot "reasonably

be taken to put the whole case in such a different light as to undermine confidence

in the verdict" of death.  Kyles v. Whitley, 514 U.S. 419, 435, 115 S. Ct. 1555,

1566 (1995).

### B.  The Jury View

Crowe alleged in his state habeas petition that, during the jury view of the

crime scene, two deputies reenacted the murder, and jurors were allowed to ask

questions of the police, the lawyers, and each other.  These allegations, contained

in the proffered affidavits of three jurors, are entirely inconsistent with the official

transcript of the jury view.  The state habeas court concluded that the juror

affidavits were inadmissible, because they sought to impeach the jury's verdict,

and concluded that Crowe could not establish prejudice from his unsupported

allegation of error.  We agree with the conclusion of the state habeas court.

Crowe cannot establish prejudice because the affidavits—the sole evidence

of his allegations—are inadmissible in Georgia courts.  "The affidavits of jurors

may be taken to sustain but not to impeach their verdict."  Ga. Code Ann.

11

§§ 9-10-9; 17-9-41. There are limited exceptions to this rule "when (1) prejudicial, extrajudicial information has been brought to the jury's attention; (2) nonjurors have interfered with deliberations; or (3) there has been irregular jury conduct so prejudicial that the verdict lacks due process." Tate v. State, 278 Ga. App. 324, 325, 628 S.E.2d 730, 732-33 (Ct. App. 2006). The state court considered whether the first exception might apply and concluded that it did not because the affidavits do not reveal the presentation of extraneous evidence to the jury.

Crowe has not rebutted the presumed correctness of this factual finding. The photographs and physical evidence mentioned in the affidavits had already been presented to the jury. The jury had heard the detailed testimony of the ballistics expert of the state about how the events of the murder likely unfolded, and the jury would hear two days later the consistent account of the murder contained in Crowe's first two confessions. Because the jurors' affidavits do not contain clear and convincing evidence of any new information conveyed to the jury, we agree with the state habeas court that no exception to the rule against impeaching the verdict applies. The affidavits are inadmissible, and in the absence of any admissible evidence that the alleged error occurred, Crowe cannot establish prejudice from the error.

12

Crowe argues that he was entitled to a federal presumption of prejudice and an evidentiary hearing under Remmer v. United States, 347 U.S. 227, 74 S. Ct. 450 (1954), but we disagree. The Remmer presumption entitles a defendant to a hearing in the trial court to ascertain actual prejudice following an allegation of extrinsic contacts with the jury. Id. at 229, 74 S. Ct. at 451. The state habeas court allowed Crowe the opportunity to present testimony on this issue, but Crowe rested on the affidavits and the court concluded that Crowe had not established actual prejudice. The federal district court was not required to offer Crowe another evidentiary hearing. In a habeas proceeding, the availability of evidentiary hearings is subject to the limits Congress has imposed. See 28 U.S.C. § 2254(e)(2). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. __, __, 127 S. Ct. 1933, 1940 (2007). The district court did not abuse its discretion when it did not conduct an evidentiary hearing. It was not unreasonable for the district court to conclude that the allegations were refuted by the official transcript and would not entitle Crowe to habeas relief.

13

## C. The Bailiff's Comment

Crowe alleged in his state habeas petition that, during the sentencing trial, defense counsel stood between the jury box and Crowe, and the jury complained to one of the male courtroom bailiffs. According to the one juror affidavit that mentions this incident, the bailiff replied that "often-times defense attorneys will purposely block the jury's view of the client if the client is not going to testify." The state habeas court admitted the affidavit for the purpose of establishing the fact of the bailiff's comment but found that the incident never occurred.

Crowe has not rebutted the presumed correctness of this factual finding by clear and convincing evidence. In opposition to the one juror affidavit, taken seven years after the trial, the record contains denials that the incident occurred from three other jurors and the two female bailiffs who attended the jury at all times. Crowe suffered no prejudice from an event that did not occur. Crowe again argues that prejudice should have been presumed under Remmer, but Crowe received an evidentiary hearing in the state habeas court. In the light of the special deference owed to the findings of fact by the state habeas court, the district court was entitled to deny Crowe another evidentiary hearing on this issue.

*D. Premature Deliberations*

Crowe alleged in his state habeas petition that he was denied a fair trial by an impartial jury when the jury engaged in premature deliberations. Crowe presented the affidavit of a juror, which alleged that, "except for one woman, the jurors reached a decision on voting for the death sentence about halfway through the defense's presentation of its case" and the jurors organized their opinions and questions between the end of the defense's case and closing arguments. The state habeas court concluded that the affidavit was inadmissible because it sought to impeach the verdict and Crowe could not establish prejudice from his unsupported allegations of error. We agree with the state habeas court.

Crowe has not argued that an exception to the rule against impeaching the verdict applies. The affidavit does not allege the presentation of extrajudicial information or the interference of nonjurors, and we do not think the allegations amount to "irregular jury conduct so prejudicial that the verdict lacks due process." See Tate, 278 Ga. App. at 325, 628 S.E.2d at 732-33. Crowe has not argued how the alleged conduct affected the verdict, and Georgia courts require that kind of showing before the due process exception may be invoked. See Bobo v. State, 254 Ga. 146, 148, 327 S.E.2d 208, 211 (1985) (exception applied where defendant established that extrajudicial evidence influenced the vote of at least

15

one juror); cf. Butler v. State, 270 Ga. 441, 446, 511 S.E.2d 180, 184-85 (1999) (exception did not apply where there was no allegation that extrajudicial evidence affected the vote of any juror). Because the affidavit was inadmissible, Crowe cannot establish prejudice from his unsupported allegation of error.

Crowe argues again that the district court should have granted a Remmer hearing. Crowe was not entitled to a Remmer presumption and hearing on this issue because he has not alleged extrinsic contacts with the jury, and the juror affidavit was inadmissible to invoke the presumption of prejudice in federal court. See Fed. R. Evid. 606(b). Indeed, federal law frowns upon this kind of inquiry into the internal communications of a jury. "[L]ong-recognized and very substantial concerns support the protection of jury deliberations from intrusive inquiry." Tanner v. United States, 483 U.S. 107, 127, 107 S. Ct. 2739, 2751 (1987). The right to an impartial jury is "protected by several aspects of the trial process," including voir dire, observation of jurors during trial by the court and each other, and the opportunity to present nonjuror evidence of misconduct. Id. Crowe has not challenged the adequacy of any of those processes in this appeal.

## IV. CONCLUSION

The denial of Crowe's petition for a writ of habeas corpus is

**AFFIRMED.**

16