[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10333
Non-Argument Calendar
_____

D.C. Docket No. 0:15-cv-61591-WPD


DWANE MASSE,

                                                    Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

                                                    Respondents-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 22, 2017)


Before JORDAN, ROSENBAUM, and EDMONDSON, Circuit Judges.

PER CURIAM:

Dwane Masse, a Florida prisoner now proceeding with appointed counsel, appeals the district court's denial of his then pro se 28 U.S.C. § 2254 petition for writ of habeas corpus. No reversible error has been shown; we affirm.

These facts are pertinent to this appeal. At about 1:00 am, Diane Meuret -- who was spending the night at her parents' house -- walked toward a bedroom and discovered a man going through her purse. Meuret grabbed the purse straps; the intruder grabbed Meuret's arm. Meuret and the intruder then stood face-to-face for about 45 seconds, as they struggled to gain control over the purse. The room was brightly-lit; nothing obstructed Meuret's view of the intruder's face. The intruder then let go of Meuret's purse and fled the house. On his way out, the intruder grabbed a purse and a monogrammed towel belonging to Meuret's mother.

Meuret called 911. About 20 to 30 minutes after Meuret's encounter with the intruder, a police officer told Meuret that police had apprehended a "suspicious car" and asked Meuret to come and possibly identify the suspect. Meuret rode with the officer for about 5 minutes to the location of the "suspicious car."

When Meuret and the officer arrived at the scene, Meuret -- from inside the officer's police cruiser -- saw a man standing against a car surrounded by four or five police officers. Meuret recognized "absolutely" the man -- later identified as

Masse -- as the intruder. Meuret testified that she identified Masse based on his facial features. After identifying Masse as the intruder, Meuret asked whether the officers had found her mother's belongings. An officer confirmed that a monogrammed towel and a checkbook belonging to Meuret's mother had been found in the car.

Before trial, Masse filed a motion to suppress the show-up and in-court identifications by Meuret, arguing that the show-up identification was unduly suggestive. The trial court denied the motion, concluding that Meuret's identification of Masse "was not unduly suggestive, was not tainted, and meets all constitutional standards." The trial court also noted that defense counsel would have a full opportunity to cross-examine Meuret about discrepancies between Meuret's description of the intruder during her 911 call and Masse's actual appearance on the night of the burglary. Following Meuret's trial testimony, Masse renewed his motion to suppress the show-up and in-court identifications; the trial court again denied the motion.

The jury returned a guilty verdict against Masse on counts of burglary, grand theft, resisting arrest, and fleeing from law enforcement. The state court sentenced Masse to 50 years' imprisonment. Masse's convictions and sentence were affirmed on direct appeal. Masse v. State, 980 So. 2d 1080 (Fla. Dist. Ct. App. 2008). Masse filed a state habeas petition challenging his convictions and

3

sentence.  The state habeas court denied Masse relief after an evidentiary hearing.

The state appellate court affirmed.  Masse v. State, 169 So. 3d 1189 (Fla. Dist. Ct.

App. 2011).

Masse timely filed this federal habeas petition.  The district court dismissed

the petition on the merits.  We granted a certificate of appealability on three issues:

(1) whether the district court erred in denying Masse habeas relief on the ground

that his trial lawyer rendered ineffective assistance in failing to object to the

prosecutor's destruction of the 911 audio recording; (2) whether Masse's right to

due process was violated by the trial court's denial of his motion to suppress

Meuret's show-up and in-court identification; and (3) whether the district court

erred in concluding that Masse was not entitled to habeas relief based on the

cumulative effect of errors in his trial.

We review de novo a district court's denial of habeas relief.  Crowe v. Hall,

490 F.3d 840, 844 (11th Cir. 2007).  Under 28 U.S.C. § 2254, when the merits of a

habeas claim have been already adjudicated in state court, our review is highly

deferential to the state court.  Id.  To obtain habeas relief, Masse must demonstrate

that the state court's ruling "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme

Court . . . or . . . was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d);

Crowe, 490 F.3d at 844.  Moreover, the state court's findings of fact "shall be presumed to be correct" and Masse bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  See 28 U.S.C. § 2254(e)(1).

Because the last state-court adjudication on the merits was the state appellate court's summary affirmance, Masse bears the burden of showing that no reasonable basis exists for the state appellate court to have denied relief.  See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), cert. granted, 137 S. Ct. 1203 (2017).

## I.

Masse contends that his trial lawyer was ineffective for failing to object to the prosecutor's erasure of the defense's copy of the 911 call.[1]  Masse argues that the 911 recording -- during which Meuret described the intruder's appearance, aspects of which were inconsistent with Masse's appearance on the night of the burglary -- was the chief evidence supporting his only defense: misidentification.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner "must prove both incompetence and prejudice by showing that (1) counsel's

---

[1] As background, the prosecutor -- believing she had no copy of the 911 call -- borrowed the defense's 911 recording.  Masse's lawyer had already listened to and taken notes on the 911 call. The recording was then somehow erased.  Nothing evidences -- and Masse does not contend -- that the erasure was intentional.

representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Zakrzewski v. McDonough, 455 F.3d 1254, 1258 (11th Cir. 2006) (quotations omitted) (citing Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984)).

About counsel's performance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 104 S. Ct. at 2066. Counsel's performance is deficient only if it falls below the wide range of competence demanded of lawyers in criminal cases. Id. at 2065.

About prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 2067. Instead, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 2068.

Because the state court denied Masse's ineffective-assistance-of-counsel claim on the merits, Masse must establish that the state court decision was objectively unreasonable. See Yarborough v. Gentry, 124 S. Ct. 1, 4 (2003). This standard "was intended to be, and is, a difficult one." DeBruce v. Comm'r, Ala. Dep't of Corr., 758 F.3d 1263, 1265-66 (11th Cir. 2014).

We cannot say that no reasonable basis exists for concluding that Masse's trial counsel provided adequate assistance. Masse's trial lawyer testified that he was able to cross-examine Meuret effectively -- without the 911 recording -- using his notes of the 911 call, Meuret's initial statement to police, and Meuret's deposition testimony. Moreover, because Meuret's trial testimony revealed some inconsistencies between Meuret's initial description of the intruder and Masse's appearance, Masse's lawyer also testified that the 911 recording itself was unnecessary to attack Meuret's credibility. Masse's lawyer also noted the potential downside of having the jurors listen to the 911 recording given Meuret's "frantic, panicky" demeanor during the call.

On this record, we cannot conclude that the decision to raise no objection to the accidental erasure of the 911 recording fell below the wide range of competence demanded of attorneys in criminal cases. Masse has failed to overcome the presumption that his lawyer rendered adequate professional assistance and made all significant decisions in the exercise of reasonable professional judgment.

Masse has also failed to demonstrate a reasonable probability that, but for his trial counsel's alleged error, the outcome of the proceeding would have been different. Masse's trial lawyer was able to cross-examine Meuret in a fit manner and to attack her credibility absent the 911 recording. In addition, nothing

evidences that the state "suppressed" the 911 recording. Masse has thus not shown

that he would have been entitled to a mistrial, a spoliation instruction, or exclusion

of evidence: remedies reserved for Brady[2] violations.


## II.


Masse next contends that the show-up identification on the night of the

burglary was unduly suggestive and that, as a result, the trial court should have

granted his motions to suppress both the show-up and the in-court identifications.

The admission of an eyewitness identification may constitute a due process

violation, if the identification procedures used were "unnecessarily suggestive and

conducive to irreparable mistaken identification." Neil v. Biggers, 93 S. Ct, 375,

380 (1972). That the identification procedure used was suggestive, however, does

not -- by itself -- violate due process. See id. at 382.

The pertinent question is "whether under the 'totality of the circumstances'

the identification was reliable even though the confrontation procedure was

suggestive." Id. The Supreme Court has identified several factors to consider in

evaluating "the likelihood of misidentification," including these factors: (1) "the

opportunity of the witness to view the criminal at the time of the crime," (2) "the

---

[2] Brady v. Maryland, 83 S. Ct. 1194 (1963).

witness' degree of attention," (3) "the accuracy of the witness' prior description of the criminal," (4) "the level of certainty demonstrated by the witness at the confrontation," and (5) "the length of time between the crime and the confrontation." Id. While we have said that show-ups are "widely condemned," we have noted that immediate confrontations are useful because "they allow identification before the suspect has altered his appearance and while the witness' memory is fresh." Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir. 1987). Thus, show-up identifications "are not unnecessarily suggestive unless the police aggravate the suggestiveness of the confrontation" in some way. Id.

First, we are unpersuaded that the show-up identification procedure was unnecessarily suggestive. Although the police indicated to Meuret that they had apprehended a "suspicious car" and that the car had given chase, the police did not suggest that the driver was in fact the intruder or otherwise pressure Meuret to make an identification.

Moreover -- even if the show-up identification procedure was suggestive -- it was nonetheless reliable under Neil. At the time of the crime, Meuret had ample opportunity to view the intruder, who was discovered in a brightly-lit room and with whom Meuret struggled for 45 seconds. Meuret was attentive during the encounter, testifying that she was able to focus on the intruder's unobstructed face during the confrontation. About the fourth and fifth Neil factors, Meuret testified

that she was "absolutely" positive at the time of the show-up identification -- which occurred less than an hour after the burglary -- that Masse was the intruder.

That aspects of Meuret's initial description of the intruder (including that the intruder had "sandy hair" and was wearing jeans) did not match Masse's actual appearance (balding with dark hair and wearing white pants) is insufficient to outweigh the remaining Neil factors.  Moreover, other details of Meuret's description -- including the intruder's race, height, physical build, and that he was wearing a gray sweatshirt -- were consistent with Masse's appearance when Meuret saw him on the roadside.

Based on the totality of the circumstances and consideration of the Neil factors, it was not objectively unreasonable for the state court to conclude that the show-up identification procedure -- and, thus, the later in-court identification -- was reliable and lawful to use.

III.

In support of his claim for cumulative error, Masse relies on the ineffective-assistance-of-counsel and due process claims we have already addressed.  Because Masse's individual claims have no merit, Masse can show no cumulative error. See Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012).

Masse has failed to demonstrate that the state court's denial of habeas relief was an "unreasonable application of" Supreme Court precedent or "based on an unreasonable determination of the facts." Accordingly, we affirm the denial of Masse's 28 U.S.C. § 2254 petition.

AFFIRMED.