[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13441
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cv-02449-SCJ

BERNARD WILLIAMS,

Petitioner - Appellant,

versus

WARDEN,

Respondent - Appellee,

MARTY ALLEN,

Respondent.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 13, 2020)

Before WILSON, ANDERSON, and EDMONDSON, Circuit Judges.

PER CURIAM:

Bernard Williams, a Georgia prisoner proceeding with appointed counsel, appeals the district court's denial of his amended 28 U.S.C. § 2254 petition for writ of habeas corpus. Williams seeks to vacate his 2009 Georgia conviction for burglary. No reversible error has been shown; we affirm.

Before his October 2009 criminal trial, Williams moved to suppress evidence and testimony about a pre-trial show-up identification of Williams by the burglary victim (B.T.). Williams also sought to exclude B.T.'s in-court identification of Williams. The state trial court denied the motion.

At trial, B.T. testified that during daylight hours on 16 August 2009, she discovered a man inside her home. B.T. described the intruder as a black male in his 50s, wearing glasses, a tan shirt, and a black fishing cap, who was also carrying a black attaché case and a small black bag. B.T. confronted the man about what he was doing in her home. Among other excuses, the man claimed he was looking for work as a handyman and gave B.T. a handwritten flyer. The face-to-face encounter between B.T. and the man lasted for three to four minutes. After the man left, B.T. realized that some of her jewelry was missing; she called the police.

2

Within a few minutes of B.T.'s 911 call, officers stopped Williams, who was observed walking about half a mile from B.T.'s home.  The officers then brought B.T. to a parking lot and asked B.T. whether the man in handcuffs (Williams) was the burglar.  B.T. remained inside the officer's police cruiser.  After viewing both Williams and Williams's driver's license photo, B.T. identified Williams as the man who had been inside her home.  At that time, Williams had on a white shirt and was not wearing a black hat or glasses.  About fifteen minutes elapsed from the time B.T. first saw the man inside her home to when she identified Williams.

At trial, B.T. identified Williams as the man she saw and spoke with in her house.  B.T. also identified Williams as the man she had identified to police shortly after the burglary.

The state presented evidence that, at the time of his stop, Williams was carrying a black attaché case.  Inside the case, officers found a black bag containing jewelry and watches, including items that B.T. identified as having been stolen from her home during the burglary.  The case also contained handwritten fliers for handyman services like the one the burglar provided to B.T.  Between B.T.'s house and the spot where Williams was stopped, officers found a black hat later identified by B.T. as the hat worn by the burglar.

After a two-day trial, the jury found Williams guilty of burglary.  The trial judge sentenced Williams as a recidivist to twenty years' imprisonment.

3

On direct appeal, the Court of Appeals of Georgia affirmed Williams's conviction and sentence. The state appellate court concluded that the evidence presented at trial was sufficient for the jury to find Williams guilty beyond a reasonable doubt.

The state appellate court also rejected Williams's challenge to the trial court's denial of his pre-trial motion in limine. The state court determined that -- even if "the one-on-one show-up procedure was impermissibly suggestive" -- the record supported the trial court's determination that "under the totality of the circumstances, there was no substantial likelihood of misidentification." The state appellate court noted that "[e]vidence presented at the hearing on the motion in limine showed that the victim saw and focused on the man she saw inside her house; that she spoke to and had ample opportunity to observe the man; and that she identified him at the police show-up about 20 minutes after the burglary."

After the state court denied Williams habeas relief, Williams timely filed pro se the section 2254 federal habeas petition at issue in this appeal. The petition then was amended with the assistance of appointed counsel. In pertinent part, Williams raised this ground for relief (Ground Five): "The trial court [improperly] admitted evidence and testimony of an unreliable eyewitness identification arising from and tainted by a single suspect show-up." Williams argued that the show-up identification made shortly after the burglary was unduly suggestive and was

4

unreliable given the totality of the circumstances.  He contended the trial court should have granted his motion to suppress both the show-up and the in-court identifications.  Williams also contended that his claim was entitled to de novo review because the Court of Appeals of Georgia failed to apply the proper standard for reviewing claims under Neil v. Biggers, 40 U.S. 188 (1972).

The district court denied Ground Five on the merits.  The district court determined that B.T.'s identification was reliable in the light of these factual findings made by the state appellate court:

> the victim saw, focused on, and spoke to the burglar, and she identified Petitioner at the show-up as the burglar shortly after the crime.  Although factors such as the victim's age, race, and stress level could have affected her ability to identify the burglar, the totality of the circumstances also includes the facts that Petitioner was [caught] walking a short distance from the victim's house with an attaché case containing the victim's jewelry and watches and the same handyman flier that the burglar gave to the victim.

The district court dismissed Williams's section 2254 petition but granted Williams a certificate of appealability on Ground Five: whether the trial court erred in admitting unreliable eyewitness testimony.

We review de novo a district court's denial of habeas relief.  Crowe v. Hall, 490 F.3d 840, 844 (11th Cir. 2007).  When the merits of a habeas claim have been already adjudicated in state court, our review is highly deferential to the state court. Id.  To obtain habeas relief under section 2254, a petitioner must demonstrate that the state court's decision "was contrary to, or involved an unreasonable application

5

of, clearly established Federal law, as determined by the Supreme Court . . . or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Crowe, 490 F.3d at 844. Moreover, the state court's findings of fact "shall be presumed to be correct" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." See 28 U.S.C. § 2254(e)(1).

The admission of an eyewitness identification may constitute a due process violation, if the identification procedures used were "unnecessarily suggestive and conducive to irreparable mistaken identification." Biggers, 409 U.S. at 196. That the identification procedure used was suggestive, however, does not -- by itself -- violate due process. See id. at 199.

The pertinent question is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Id. The Supreme Court has identified several factors to consider in evaluating "the likelihood of misidentification," including these factors: (1) "the opportunity of the witness to view the criminal at the time of the crime," (2) "the witness' degree of attention," (3) "the accuracy of the witness' prior description of the criminal," (4) "the level of certainty demonstrated by the witness at the confrontation," and (5) "the length of time between the crime and the confrontation." Id. at 199-200.

6

Williams has not rebutted by clear and convincing evidence the state appellate court's factual findings on these pertinent factors: those findings are thus entitled to a presumption of correctness.  See 28 U.S.C. § 2254(e)(1); Sumner v. Mata, 455 U.S. 591, 597 & n.10 (1982) (each of the Neil v. Biggers factors "requires a finding of historical fact" to which the statutory presumption applies). "The ultimate conclusion as to whether the facts as found state a constitutional violation is a mixed question of law and fact" subject to de novo review.  See Sumner, 455 U.S. at 597 n.10; Cikora v. Dugger, 840 F.2d 893, 895 (11th Cir. 1988).

Even if we assume that the show-up identification procedure used here was suggestive, it was nonetheless reliable under the factors identified in Neil v. Biggers.  B.T. had ample opportunity to view the burglar: B.T. discovered the burglar in her home during daylight hours and spoke to him face-to-face for three to four minutes.  B.T. was attentive during the encounter, testifying that she could see clearly the burglar's unobstructed face during the confrontation.  B.T. then identified Williams as the burglar fifteen minutes after the burglary.

Williams argues that aspects of B.T.'s initial description of the burglar (that he wore a tan shirt , a black hat, and glasses) did not match Williams's actual appearance when he was stopped (wearing a white shirt and no hat or glasses). Williams also contends that -- before viewing Williams's driver's license photo --

7

B.T. showed some initial uncertainty about whether Williams was the man inside her house. These facts, however, are insufficient to outweigh the remaining Neil v. Biggers factors, particularly where evidence exists that Williams took steps to alter his own appearance after leaving B.T.'s house. Moreover, the evidence shows that other details of B.T.'s description -- including the burglar's race, age, and physical build -- were consistent with Williams's appearance.

Based on the totality of the circumstances and consideration of the Neil v. Biggers factors, it was objectively reasonable for the state appellate court to decide that the show-up identification procedure -- and, thus, the later in-court identification -- was reliable and lawful to use.

To appeal, Williams finds fault with the language of the state appellate opinion. He contends that the Court of Appeals of Georgia reviewed his claim under an incorrect standard. Williams focuses on one sentence in the state appellate court's opinion: "There was evidence supporting the trial court's ruling, so we find no clear error in the court's conclusion that, under the totality of the circumstances, there was no substantial likelihood of misidentification." We are unpersuaded by an ambiguous, isolated sentence in the opinion. We do not grade state court opinions. The state appellate court's ultimate decision is consistent with the state appellate court's having considered the pertinent factors under Neil v. Biggers, and the decision shows the appeals court correctly concluded that the trial

8

court committed "no error" in denying Williams's motion in limine. This conclusion is one which we independently reach, as well.

We affirm the denial of Williams's 28 U.S.C. § 2254 petition.

AFFIRMED.