**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 27, 2019**

# In the Court of Appeals of Georgia

A19A0168. BONNER v. THE STATE.

COOMER, Judge.

Lynnward Bonner appeals his conviction for three counts of aggravated assault (OCGA § 16-5-21) on which he was found guilty but mentally ill, one count of criminal damage to property in the first degree (OCGA § 16-7-22), one count of possession of a firearm during the commission of a felony (OCGA § 16-11-106), and one count of discharge of a firearm on the property of another (OCGA § 16-11-104). On appeal, Bonner raises three issues: (1) that the trial court erred by improperly admitting other acts evidence under OCGA § 24-4-404 (b), (2) that his trial counsel was ineffective for failing to request funds for an expert, and (3) that the State committed a *Brady* violation. For the reasons stated below, we affirm.

When a criminal conviction is appealed, the evidence is viewed in the light most favorable to the verdict. *Whaley v. State*, 337 Ga. App. 50, 50 (785 SE2d 685) (2016). The record shows that Bonner lived and worked as a handyman at Shady Acres Trailer Park, which was owned by his mother. Norma Auceda Gomez ("Gomez") and her family were Bonner's neighbors at Shady Acres Trailer Park. Bonner, who had a history of mental health issues, testified that he sometimes experienced hallucinations such as patterns, projected holograms, and faces in clouds and trees.

Around 6:00 a.m. on September 2, 2015, Bonner purportedly saw a hologram of a man and woman on the side of Gomez's trailer. The man's face looked "mean" and he had seen it on prior occasions. Bonner came to the conclusion that there was an ongoing hostage situation and he asked the hologram of the woman if she was ready to die, to which she shook her head "no." Bonner responded to her saying "no, this has got to end. I'm ready to die if you are," and the hologram woman nodded "yes." Bonner then knocked on Gomez's trailer door and an unfamiliar voice told him to wait a minute. When no one came to the door after a few minutes Bonner left to return to his trailer, and on the way back he encountered what he thought was a drone and he asked it if the situation at Gomez's trailer was legitimate, to which the drone

2

responded affirmatively. He then retrieved his shotgun and ammunition from his trailer, returned to Gomez's trailer, and shot twice into the side of the trailer, where the perceived holograms were located. The shots went into the master bathroom, where one of Gomez's daughters was getting ready for school. The daughter received a minor injury.

After the shooting, no one came out of the trailer and Bonner returned to his work trailer. On his way back, Bonner saw some children and he did not want them to see the gun so he put it down by his side and away from them. When Bonner returned to his work trailer, he "realized that things weren't going like I thought they were" when no gunmen or hostages emerged from Gomez's trailer. Bonner then saw police cars drive into the park, and he realized that he was "screwed" because he knew that the officers were looking for him. He put the shotgun and ammunition in a bedroom closet and went into the bathroom to hide. Bonner heard the deputies enter the trailer and call out, but he did not respond. He remained hidden in the bathroom until the deputies came in and arrested him.

At trial, Bonner stated that he believed the holograms were on Gomez's trailer and people were inside the trailer. He said that is why he asked the female hologram if she was prepared to die. He further stated that when he saw the sheriff's cars after

3

the shooting he knew that it was likely that what he had done was not the right thing to do. In addition, he acknowledged that it was not right for him to shoot the little girl.

Dr. Darcy Shores from the Department of Behavioral Health and Development Disabilities (DBHDD) evaluated Bonner on January 4, 2016 and determined that he was incompetent to stand trial. Bonner was then admitted to Central State Hospital. On May 24, 2016, Bonner was again evaluated for competency at Central State Hospital and was determined to have been restored to competency. On December 5, 2016, Dr. Sanjay Shah from the DBHDD evaluated Bonner for criminal responsibility. During that evaluation, for the first time since being arrested, Bonner relayed a version of events that included holograms on Gomez's trailer and a belief that there was a hostage situation. Dr. Shah concluded that Bonner was criminally responsible. Dr. Shah testified at trial that Bonner possessed the mental capacity to distinguish right from wrong because there was no prior documentation of Bonner relaying a version of events that included holograms and hostages. Further, Dr. Shah testified that even if Bonner had actually believed that a hostage situation was ongoing, shooting a gun into the trailer would not have been a justifiable act. Finally,

4

Dr. Shah said that he believed that Bonner's actions after the shooting were inconsistent with an alleged attempt to rescue the people inside the trailer.

Bonner was found guilty but mentally ill on three counts of aggravated assault, and guilty of one count of criminal damage to property in the first degree, one count of possession of a firearm during the commission of a felony, and one count of discharge of a firearm on the property of another. Bonner timely filed a motion for new trial. Following a hearing, the trial court denied his motion. This appeal followed.

1. Bonner contends that the trial court improperly admitted evidence of a prior act under OCGA § 24-4-404 (b) for the purposes of intent, identity, absence of mistake or accident, and consciousness of guilt. Specifically, he argues that the evidence pertaining to a 2008 incident at Shady Acres Trailer Park had no probative value for any of the purposes listed above. We disagree.

"[O]n appeal, we review the admission of Rule 404 (b) evidence for a clear abuse of discretion." *Gunn v. State*, 342 Ga. App. 615, 620 (1) (804 SE2d 118) (2017) (citations and punctuation omitted).

In the 2008 incident, which was admitted into evidence at trial, Bonner attempted to stop a domestic abuse situation that occurred at Shady Oaks Trailer Park.

5

He heard one of his neighbors, who he believed had been a prior victim of domestic abuse, cry out for help. In response to his neighbor's cry for help Bonner fired a gun into the air and told the abusive neighbor to stop. After firing the shot, Bonner believed the abuse was still ongoing. He ultimately fired three shots outside of the neighbor's trailer over the span of several minutes. By that time, police arrived and Bonner returned home.

(a) Bonner first argues that he was not afforded notice of the purposes for which the Rule 404 (b) evidence would be used at trial. Prior to trial, the State provided notice to Bonner that it would use the evidence to show intent, identity, absence of mistake or accident, and consciousness of guilt. At trial, the trial court instructed the jury to limit its consideration of the evidence to those same purposes. Bonner's notice argument hinges on the State's assertion during the motion for new trial hearing that it had admitted the evidence to rebut Bonner's defense of insanity. Despite this post-trial assertion by the State, the notice Bonner received before trial of the Rule 404 (b) purposes corresponded with the purposes for which the evidence was actually used at trial. Therefore, Bonner's argument that he did not receive proper notice is without merit.

(b) On the merits, we find that the Rule 404 (b) evidence was admissible for the purpose of intent. In his brief, Bonner argues that by virtue of pleading not guilty by reason of insanity, he admitted to the act of shooting into Gomez's trailer, and therefore, his intent was not at issue during trial.

If we were to adopt Bonner's argument, Rule 404 (b) evidence would never be admissible to show intent when an accused pleads not guilty by reason of insanity. However, the Georgia Supreme Court has held that when a defendant pleads not guilty by reason of insanity, prior act evidence is admissible insofar as it "aids in identification or shows the state of mind . . . of the accused." *Blake v. State*, 239 Ga. 292, 295 (1) (236 SE2d 637) (1977) (citations omitted). Contrary to Bonner's assertions, he placed his intent at issue during trial by pleading not guilty by reason of insanity. *See Kirk v. State*, 168 Ga. App. 226, 231 (13) (308 SE2d 592) (1983) (Trial court did not err in instructing the jury on the State's burden to prove criminal intent where defendant pled not guilty by reason of insanity.). Therefore, the Rule 404 (b) evidence about the 2008 incident involving Bonner was relevant and the State was permitted to use it to show Bonner's intent at the time of the shooting. *See Olds v. State*, 299 Ga. 65, 75 (2) (786 SE2d 633) (2016) ("[B]ecause a plea of not guilty puts the prosecution to its burden of proving every element of the crime — including

7

intent — evidence of other acts that tends to make the requisite intent more or less probable to any extent is relevant. . . . And it is true whether or not intent is actively disputed at trial." ((citation omitted)). Because the Rule 404 (b) evidence was properly admitted for the purpose of intent, Bonner has not shown reversible error.

(c) Even if the Rule 404 (b) evidence was improperly admitted to show identity, absence of mistake or accident, or consciousness of guilt, the error is harmless. We will uphold a trial court's decision to admit evidence of a prior act under OCGA § 24-4-404 (b) if one of its cited bases is justified. *See Bradshaw v. State*, 296 Ga. 650, 657 (3) n.5 (769 SE2d 892) (2015) ("Having determined that the evidence was admissible as to intent and motive, we need not examine whether it was also admissible on the issue of identity.")

2. In his second enumeration of error, Bonner argues that his privately-retained trial counsel was ineffective for failing to request public funds to hire and present an independent psychiatric expert. We again disagree.

> To prevail on this claim, [Bonner] is required to prove both that his counsel's performance was professionally deficient and that he was prejudiced by the deficient performance. To prove deficient performance, [he] must show that his lawyer performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms.

8

*Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013) (citations and punctuation omitted). *See also Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984). Here, Bonner's claim fails because he has not shown that his trial counsel's representation fell below an objective standard of reasonableness.

Prior to the motion for new trial hearing, Bonner's appellate counsel – a public defender – applied for, and obtained, $2,000 from the trial court in order to retain the services of a forensic psychiatrist, Dr. Norman. Dr. Norman testified at the motion for new trial hearing that Bonner did not understand right from wrong when he shot into Gomez's trailer. Bonner's trial counsel testified at the same hearing that she considered hiring an expert, but it was cost prohibitive. She also said that she "was not aware of any mechanism, by which we could get the State or – you know, someone else to help subsidize that cost or pay for that cost."

Under federal law

Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate judge if the services are required in connection

9

with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.

18 USCA § 3006A (e). Our General Assembly has enacted no analogous statute. In Georgia, an indigent person can apply for the services of the Georgia Public Defender Council to obtain representation in a criminal proceeding. *See* OCGA § 17-12-1 et seq. Under this system, the "council shall be responsible for assuring that adequate and effective legal representation is provided . . . to indigent persons who are entitled to representation[.]" OCGA § 17-12-1 (c).

Bonner has cited no authority, and we have found none, for the proposition that a criminal defendant with privately-retained counsel may apply for, and make use of, taxpayer money to aid in their defense. "[W]hen addressing a claim of ineffectiveness of counsel, the reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial." *Redwine v. State*, 280 Ga. 58, 62-63 (3) (c) (623 SE2d 485) (2005) (citation omitted). Here, Bonner's trial counsel did not perform deficiently because no clear line of authority existed in Georgia at the time of trial which would have allowed Bonner to obtain public money to hire an expert. Counsel cannot be faulted for failing to raise every conceivable issue in a case, particularly where, as here, a theory of law is untested or unsettled. That would be both an unduly

heavy and impractical burden. Because Bonner has not met the first prong of the *Strickland* test, his claim of ineffective assistance of counsel fails. *See Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015) ("Failure to satisfy either prong of the *Strickland* test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong." (citation omitted)).

3. In his third enumeration of error, Bonner asserts that the State committed a *Brady* violation by failing to disclose payments made by the District Attorney's office to Dr. Shah, a court-appointed psychiatrist, for his time spent testifying.[1] This claim also lacks merit.

> In order to prevail on [a] *Brady* claim, [the defendant] must show: (1) the State possessed evidence favorable to the defendant; (2) the defendant did not possess the favorable evidence and could not obtain it himself with any reasonable diligence; (3) the State suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the trial would have been different.

*Schofield v. Palmer*, 279 Ga. 848, 852 (2) (621 SE2d 726) (2005) (citations omitted).

---

[1] *Brady v. Maryland*, 373 U.S. 83 (83 SCt 1194, 10 LE2d 215) (1963).

Bonner alleges that Dr. Shah testified that he was paid by the Monroe County District Attorney's office for his testimony at trial. However, the record does not support his contention. At the motion for new trial hearing, the defense called Dr. Shah, and during direct examination, the following exchange occurred:

Q. Okay. All right. When you testified at trial, who paid for your testimony?

A. So I received a check from the Judicial Circuit.

Q. From? The Judicial –

A. Monroe County Judicial Circuit, yes.

Q. The Towaliga Judicial Circuit

A. Yeah.

Q From the District Attorney's Office?

A . I -- I looked at the check, it said the -- the Judicial Circuit.

Q. Who -- with whom did you negotiate fees with?

A. So I -- the one that was -- Paul Hemmann and so I discussed my fees with him, just as I discussed my fees with you during our correspondence.

Q Okay. And he -- and it was with him that you -- I understand you have a flat rate?

A. So I -- I capped -- I capped it during my testimony there. That's correct. I believe I might have capped it at four hours or so.

Q. And you sent an invoice to the District Attorney's Office?

A. That's correct

Q. And you were paid?

A. And I was paid by, yeah, the Judicial Circuit.

12

THE COURT: You were paid by the Circuit, which is a CPA in Griffin that covers our Circuit for us.

No further discussion about the payment to Dr. Shah occurred on the record.

Regardless of who paid Dr. Shah for his testimony, Bonner has failed to show that he used reasonable diligence prior to trial to discover the alleged *Brady* evidence. Bonner did not proffer how or when he discovered the information pertaining to Dr. Shah's payment. As a practical matter, Bonner could have attempted to speak with Dr. Shah prior to trial regarding any compensation he was receiving. However, the record fails to disclose what steps, if any, Bonner took to try and obtain this information. *See State v. James*, 292 Ga. 440, 442 (2) (738 SE2d 601) (2013) ("Evidence is not regarded as " suppressed" by the government when the defendant has access to the evidence before trial by the exercise of reasonable diligence." (citation omitted)). Bonner's presentation of this evidence at a post-trial hearing, without establishing the circumstances under which he acquired the information, does not satisfy the due diligence prong of the *Brady* test. *See Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980) ("[D]iligence before trial will not be inferred from diligence after conviction."). Because Bonner has not shown that he could not

have obtained the alleged *Brady* evidence through the exercise of reasonable diligence, this claim fails and Bonner's convictions are affirmed.

*Judgment affirmed. Doyle, P. J., and Markle, J., concur.*