**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 13, 2022**

# In the Court of Appeals of Georgia

A22A0904. NAILS v. THE STATE.

LAND, Judge.

After Dwight Nails was charged with crimes including child molestation, a trial court denied his application for public funds on the ground that he was represented by private counsel. We granted Nails' interlocutory application to determine whether the Supreme Court of Georgia's decision in *Duke v. State*, 311 Ga. 135 (856 SE2d 250) (2021), requires further proceedings on the question of his status under the Georgia Indigent Defense Act of 2003, OCGA § 17-12-1 et seq. ("IDA").[1] Because the trial court never ruled on the questions of whether Nails is actually indigent under

---

[1] Although Nails's brief makes occasional reference to his constitutional right to counsel, we cannot say that he has squarely presented a claim of error concerning this right, either below or on appeal. We therefore limit our discussion to his claim that *Duke* requires access to public funds even for those defendants retaining private counsel.

OCGA § 17-12-2, whether his counsel is representing him on a pro bono basis at the present time, and whether he could have access to "state-funded ancillary defense services by contracting with either the [Georgia Public Defenders Council (GPDC)] or the appropriate circuit public defender," *Duke*, 311 Ga. at 144 (2) (b), we vacate the trial court's order and remand for further proceedings on these issues.

The record shows that in October 2018, Nails was charged with one count of child molestation and two counts of sexual battery against a child under the age of 16. His family retained private counsel to prepare a defense. However, Nails claims that his family has exhausted its resources for his defense, that he is indigent within the meaning of OCGA § 17-12-2, and that his lawyer is, in essence, working pro bono. After the State gave notice of its intent to present evidence including a forensic interview with the alleged victim, Nails moved for a finding that he was indigent as defined by OCGA § 17-12-2 and for funds to hire an expert witness. At a hearing at which both Nails and the State appeared, Nails and his sister testified that although the family had paid for the retention of private counsel, they had no further resources to devote to his defense.

In its October 2019 order denying Nails' request for public funds, the trial court cited *Bonner v. State*, 351 Ga. App. 439 (830 SE2d 514) (2019), in which this Court

held that privately retained defense counsel was not ineffective for failing to request public funds for an expert to evaluate the defendant's mental condition. Id. at 443-444 (2). In the course of our discussion, we noted that although "[i]n Georgia, an indigent person can apply for the services of the [GPDC] to obtain representation in a criminal proceeding," id. at 443 (2), Bonner had "cited no authority, and we have found none, for the proposition that a criminal defendant with privately-retained counsel may apply for, and make use of, taxpayer money to aid in [his or her] defense." Id. The trial court cited *Bonner* to the same effect in its February 2021 order.

In March 2021, however, our Supreme Court issued its decision in *Duke*. That defendant was represented by pro bono counsel who had applied to the trial court for public funds to hire a DNA expert, a forensic psychologist, a false confessions expert, and an investigator. 311 Ga. at 135-136 (1). The trial court denied Duke's request on the ground that the IDA did not "contemplate a method whereby an indigent criminal defendant represented by private or pro bono counsel could obtain state funds for ancillary defense services." (Emphasis omitted.) Id. at 138 (1).

On interlocutory appeal, the Supreme Court reversed and concluded that the trial court's interpretation of the IDA was erroneous. *Duke*, 311 Ga. at 140-41 (2) (a). The Supreme Court first held that the trial court erred by concluding that pro bono

3

counsel qualified as "other resources" under OCGA § 17-12-2 (6) (c), thus rendering the defendant non-indigent. The Court then held that OCGA § 17-12-5 (b) (1)'s requirement that the GPDC should "provide support services . . . for circuit public defenders *and other attorneys representing indigent persons*" was "best read broadly" and included pro bono counsel. (Emphasis in original.) Id. at 141-142 (2) (b). The Court rejected the GPDC's argument that providing funding for experts would be prohibitively expensive, noting that the defendant's retention of pro bono counsel, in lieu of the services of a public defender for which he would have qualified, had saved the State money. See id. at 144 (2).

The Court thus concluded that the IDA *does* "provide[] a mechanism for pro bono counsel representing an indigent defendant to access public funding for ancillary defense services: *by entering into a contractual relationship with either the circuit public defender or directly with the GPDC*." (Emphasis supplied.) *Duke*, 311 Ga. at 144-145 (3). The Court remanded the case "to allow Duke to seek a contract with the GPDC or the circuit public defender that would provide him access to state-funded ancillary services." Id. at 145-146 (3). In so ruling, the Court noted that it was avoiding the "difficult constitutional questions that would arise if Duke [were] unable to obtain needed ancillary services." (Footnote omitted.) Id. at 145 (3).

4

Nails moved this trial court to reconsider its holding in light of *Duke*. In response, the trial court entered a series of orders, the last of which was entered in September 2021, omitting any reference to our decision in *Bonner* but again concluding that (1) there was no "authority for the proposition that a defendant with privately retained counsel" was authorized to public money to fund his defense and (2) the Supreme Court's holding in *Duke* was "limited in its application" to cases involving "pro bono counsel [rather than] privately retained counsel[.]" The trial court did not specifically address whether Nails was indigent (either at the time his family retained counsel for him or at the time the request for funds was made). Nor did the trial court address whether Nails' counsel was now representing Nails on a pro bono basis. The trial court granted a certificate of immediate review concerning these rulings, and we granted Nails' application for an interlocutory appeal.

The IDA charges the GPDC with assuring that indigent criminal defendants receive "adequate and effective legal representation." OCGA § 17-12-1 (c). The IDA's provision of indigent defense services includes not only legal representation, but also a variety of other support services. See OCGA §§ 17-12-5 (b) (1) ("technical, research, and administrative assistance"), 17-12-5 (b) (3) ("outside consultants"), 17-12-28 (investigators), 17-12-29 (administrative, clerical, and paraprofessional

5

personnel). As we have noted, the IDA defines an indigent defendant as a person charged with a felony who earns less than 150% of the federal poverty guidelines, "unless there is evidence that the person has *other resources that might reasonably be used to employ a lawyer without undue hardship* on the person [or] his or her dependents[.]" (Emphasis supplied.) OCGA § 17-12-2 (6) (C).

*Duke* held that "when a defendant is represented by *pro bono* counsel, that lawyer is not an 'other resource' available to employ a lawyer[,]'" 311 Ga. at 141 (2) (a) (emphasis supplied), and further held that there is a "contractual mechanism . . . for pro bono counsel representing an indigent defendant to access public funding for ancillary services[.]" Id. at 145 (3). Here, we are faced with a defendant whose *privately retained* counsel represented him below and continues to do so on this appeal. However, Nails contends that his family provided the initial funds for his defense, that those funds are now exhausted, and that he presently has no resources available for his defense. Although our Supreme Court held in *Duke* that the IDA should be construed broadly and that there is a mechanism for "attorneys who represent indigent defendants," 311 Ga. at 142-143 (2) (b), to request funds for ancillary services needed for an effective defense, the trial court never specifically ruled on the questions of whether Nails was indigent at the time his family retained

6

counsel for him, whether Nails is presently indigent, or whether Nails' counsel is now working on a pro bono basis. Compare *Dukes*, 311 Ga. at 139-140 (2) (a) (reversing the portions of the trial court's order ruling that defendant was not indigent since he had *pro bono* counsel).

Under our Supreme Court's guidance in *Duke*, we vacate the trial court's order and remand for further proceedings, including an evidentiary hearing and findings on the question of Nails' indigency as defined by OCGA § 17-12-2 (6) (C) and the question of whether Nails' counsel is now representing him on a pro bono basis. If the trial court finds Nails to be indigent under that statute, it should then determine whether Nails is authorized to seek "a contract with the GPDC or the circuit public defender that would provide him access to state-funded ancillary services."[2] (Footnote omitted.) *Duke*, 311 Ga. at 146 (3); see also OCGA § 17-12-5 (b) (1) (GPDC must provide support to public defenders and "other attorneys representing indigent persons"). Only after these issues are resolved in the first instance by the trial court might further appellate review be appropriate. See *Duke*, 311 Ga. at 145 (3) (avoiding

---

[2] Our opinion in *Bonner* does not require a different result because it never addressed the IDA's definition of indigency. See *Palmer v. State*, 282 Ga. 466, 468 (651 SE2d 86) (2007) ("questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (footnote and punctuation omitted).

ruling on the question whether "the United States Constitution requires provision of ancillary services for indigent defendants by some other mechanism outside the IDA"); id. at 146 (Peterson, J. concurring) (approving of the majority's interpretation of the IDA as "render[ing] [that] difficult analysis unnecessary").

*Judgment vacated and case remanded with direction. McFadden, P. J., and Gobeil, J., concur.*